argument just on the briefs, namely Appeal 1562 from 2008, Fraser v. Highliner Foods, and Appeal 3031 from 2009, Poblet v. Office of Personnel Management. We'll hear argument first, and Bechler v. Interior, Appeal 3001 of 2009. Mr. Thompson, good morning to you, welcome to the Court. Please proceed. Thank you, Your Honor. May it please the Court, Counsel. This consolidated appeal reaches this Court from three final decisions of the Merit Systems Protection Board, in which Whistleblower Protection Act claims, IRA claims of a 31-year-old Department of the Interior wildfire-fighting employee, Dan Bechler, were summarily dismissed upon last lack of jurisdiction grounds. You can assume that we're pretty familiar with the facts and the issues. Perhaps you can proceed to the core of your argument. Two of the four principal disclosures are led to be protected disclosures, were disqualified on legal grounds as being part of a grievance proceeding or part of an individual right of action proceeding, and the other two, as I understand it, were essentially rejected as being protected on the grounds that they were so vague as to simply not state a whistleblower-type allegation. And look to me, of those two, the closer was the one having to do with the airplane matter, the disclosure made to the district manager in, I guess, Billings, Montana in 1998. But I wonder if you can help me understand exactly what the district manager was told. I couldn't find a document that recorded what the district manager was told by Mr. Bechler. Is there such a document? There should be in the record, Your Honor. In that particular disclosure, Mr. Bechler was... No, don't tell me what he said. Tell me where the document can be found. That's what I'm having trouble with. I want to read the document myself, not have somebody tell me what it says. Your Honor, it should have been annotated into the record in our briefing and should be... I didn't find any citation in the brief to anything in the appendix that purported to be this 1998 disclosure. That's my whole problem. I believe that the disclosure was tabbed and annotated in the agency record and I cannot, at the moment, identify a specific location. Maybe on rebuttal you can identify where we can find that. You may not be aware that not everything tabbed in front of the MSPB is sent here. So it may be that it's at the MSPB but not before us, which is a pretty serious problem if that's a close issue and that's one of the documents you're relying on. Does that record give any dates or places or specific allegations? It does give specific allegations. Does it give dates, places, specific allegations? Yes. What is the date? The specific date of the alleged aircraft flying without proper qualifications and what's illegal about a cell phone call? It is illegal to guide wildfire operations with a cell phone call. To what? In other words, to use a cell phone when you're in the air fighting wildfires as opposed to a Department of the Interior BLM radio frequency. Is there a regulation that prohibits that? There is, Your Honor. Is that cited somewhere? It is not. It was cited, I believe, in the underlying proceedings but that particular FAA citation is not. Which fire were they fighting in 1998 when this allegedly happened? Well, Your Honor, first of all, in this particular case, it is our position that there are a number of other allegations that were protected disclosures. But see, this one's kind of symptomatic in that it's an allegation but it is devoid of any kind of substance, any kind of factual underpinning. There's no dates. There's no specific places. There are no witnesses that corroborate these allegedly heinous acts of government miscarriage. Well, Your Honor, to pick up on that point, the AJA in her decision found that, for instance, the appellant's disclosures were, quote, and I'm referring to footnote three of our brief on page 11 of our brief, vague allegations of wrongdoing that do not constitute protected disclosures with regard to the Department of the Interior Office of Inspector General reports that were made. And those are referenced at pages 9 through 11 or 12 of our brief. Between May and August of 2003, and this is a legitimate and specific disclosure, and the findings of fact were made by the board. It's not going to help if you talk about disclosures in gross. We're going to have to talk about them one at a time because their sufficiency has to be judged individually. So we were asking about the 1998 disclosure, and I understand your answers to Judge Rader to essentially be no, no regulation was cited, no statute was cited, no date was cited, no particular fire was cited, no underlying facts as to why Beckler, pardon me, Edmonds wasn't qualified. So that isn't the case as far as dates and times of the use of the phone. Those were very specific. As far as the FAA. Was it the same flight? It was on a number of occasions, but specific dates were recited. It was on a number of occasions. As I understand it, there was one flight in which supposedly Edmonds lacked the qualifications to be piloting or directing that flight. That's correct. And that was the same event where there was the use of the cell phone or was that a different event? The lack of qualifications was over a period of time. The cell phone was specific dates. Including the date of the legal flight? Lack of qualification, yes. Now, the complaints to the DO, Department of the Interior Office to the Inspector General were made between May and August of 2003. Is this the trailer hook issue? No, that was the way it was disparaged by the AJ and the- What was the content of the IG disclosures by Vector in 2002 and 2003? We said that Allen Edmonds wasted in excess of $14,000 in excess, in addition to time and resources, and that is trailer hookup. But there were also other allegations that are part of the record with regard to waste and mismanagement at that time. These were made. I think this is part of the record. What documents are you referring to and where do we find them? These are at appendix pages 50-79 and 290-319. Mr. Beckler was making these disclosures in the Let's stick to the procedure of one by one because otherwise I don't see how we can make any progress. With respect to the trailer hookup, how does that allege a violation of law or a gross waste of funds? The specifics are in the document. His point was- What are the specifics? The specifics were that this trailer hookup was defective, unnecessary, and that- The board found that it was not shown to be unnecessary or unrelated to the mission of the agency. The board made that finding and also ignored the fact that there were other allegations made at the same time. One at a time. On the trailer hookup, why is that specific enough to say that there was a trailer hookup with no explanation of why it was a waste? There are more specifics to that particular allegation than that which Your Honor just recited or that I have. They are in the record. I am not able to- The appendix here as opposed to the record below. The appendix here and in the record below. Okay. These allegations were made, these disclosures, these protected disclosures were made to Special Agent Wood by Mr. Beckler over- How much should they have spent on that? Mr. Beckler was essentially saying that all $14,000, the entire concept was- You don't get a trailer hookup for nothing, so what does it cost? The trailer wasn't necessary is the point. At all? At all. Why not? This is not merely a question of agency discretion or management. This was a case of- What's the basis of his saying the trailer wasn't necessary? Because they had plenty of office space right there. And besides, it wasn't an allegation, it was just made- That sounds like a judgment call and why is he questioning the judgment call of a All of the allegations that were made by Mr. Beckler to Mr. Wood of DOIG at that time in the summer of 2003 leading up into the fall of 2003 are recited in the record and on rebuttal I'll be a little more specific, but I'd like to say that shortly after that, in September of 2003, within two weeks of the time that there was going to be a hearing on the merits in a preceding case, Mr. Beckler's home was invaded by Special Agent Wood, the person who he was making whistleblower disclosures to, and a whole bunch of other federal agents, and suddenly he's got eight hours of searching and- Even assuming that this search was not proper, assuming that it was not proper, what personnel action adverse to Mr. Beckler is associated with that event? Mr. Beckler alleges that this disclosure concerning what he was saying to DOIOIG, not just the trailer hookup, but the other content that he was disclosing, and I'm moving into my very limited rebuttal time, but at that point was, these allegations were, the basis were, number one, the treatment that he got thereafter, placement in non-pay, non-duty status October 12th before the end of the firefighting season and not being returned to pay and duty status in March of 2004, those are contemporaneous with these other events, very contemporaneous, also the fact that- That goes to whether the case could be proven at a trial, the only issue before us is whether a hearing- And that's even a jurisdictional hearing, and that's our central point in this appeal. All right, let's hear from the government and we'll restore some rebuttal time. Thank you, Your Honor. May it please the board in all three decisions, Beckler 1, Beckler 2, and Beckler 3, that the board did not possess jurisdiction to entertain Mr. Beckler's claims? It's troubling, is it not, that the AJ, everybody kind of admits or concedes that the wrong standard was used in this case? Well, I'm sorry, the board said that the AJ used the wrong standard? Is that what However, the board's comment there was only with respect to the AJ's standard concerning the contribution element of a non-frivolous allegation, Your Honor. And what the board said is because the AJ made a mistake with respect to that, the board didn't consider that element at all. In other words, the board did not conclude that there was a lack of jurisdiction because there was the absence of a non-frivolous allegation with respect to contribution. The board instead went and relied on, in its different decisions, on the absence of a non-frivolous allegation of a protected disclosure and the failure to exhaust administrative remedies before the Office of Special Counsel. And neither of those analyses by the administrative judge were in any way affected by the error that the AJ had in its standard using preponderance evidence that the board cited. So that error was essentially eliminated. And I would also point out to the determination by the court. So even if there was an error by the administrative judge in its determination, it really wouldn't affect this court's role here, which is to review the board's decision. This court has, in its questioning of claimant's counsel, has very well identified the reasons that the board's decision was correct concerning the absence of a protected disclosure with respect to the disclosures concerning the 1998 flying activities that are alleged by Mr. Beckler concerning Mr. Edmonds and with respect to the disclosures to Senator McCain's staff concerning the hunt contract. There is an absence of any specificity, an absence of any detail, and an absence of any basis to conclude that a disinterested observer could conclude that there was a violation of any of the protected activities. Well, what about the series of disclosures to the agent of the inspector general? Well, there's two allegations that are directed to that, Your Honor. One would be the trailer hookup was to the inspector general. And the last one, which only relates to Beckler 2, would be the allegation concerning the false testimony that was allegedly provided in the suppression hearing. I'd start off with the latter one because it's only applicable to the Beckler 2 case, which is 2002 before this case. And that's simply because the allegation occurred in spring of 2005. And the alleged retaliatory conduct in Beckler 1, which is putting him in an off-duty pay status in 2003, and then failing to return him to a duty status in 2004, and in Beckler 3, which is the termination of his life insurance and health insurance benefits, all occurred before the alleged disclosure. So it only relates to one incident. And that, Your Honor, turns on the alleged disclosure being a May 2005 letter, which is contained in the joint appendix at page 0321. And in this letter, there clearly is, this is the one instance we have here where arguably there was a protected disclosure made, because this is a letter at page 0321 that was to the Office of Inspector General from counsel for Mr. Beckler. And it's alleged there that there was false testimony provided in a suppression hearing. Again, this only relates to the Beckler 2 incident. The problem with that document, and we do not contest in our brief that this is a failure to make a non-frivolous allegation of protected disclosure. The problem here is that this was never submitted to the Office of Special Counsel. Therefore, there was no exhaustion of administrative remedies. So neither the document was submitted to the Office of Special Counsel, nor it doesn't have to be a document. There could be an allegation submitted to the Office of Special Counsel. So your view is that there were only two allegations forwarded to the Inspector General? Well, with respect to the five identified protected disclosures, there's four protected disclosures in Beckler 1 and Beckler 2. I understood Mr. Thompson to say that there were multiple disclosures to the Inspector General in 02 and 03, one of which dealt with the trailer hookup issue, but then there were others. You seem to be saying, yeah, but only one other. Well, that's right. There's only one other. There were other allegations made to the Office of Inspector General. The problem is none of them were submitted to the OSC, nor were any of them, Your Honor, alleged in the IRA appeal. And I would ask this court to carefully look at a number of documents in this case in which the administrative judge, who appeared to be somewhat frustrated with its inability to get its hands around what allegations were made in the IRA appeal, issued an order. And it said, I'm concerned about jurisdiction. Tell me why there's jurisdiction in this case. And a pleading was filed by Mr. Beckler. And that was in all three cases. In Beckler 1, the pleading is at 466 to 470. In Beckler 2, the pleading is at 0033 to 0035. And in Beckler 3, it's at 0452 to 053. And in those pleadings, Mr. Beckler identifies four protected disclosures that he was alleging in his IRA appeal in Beckler 1 and Beckler 3, and five in Beckler 2. And the allegation with respect to the search of his residence because of the criminal concerns was only in Beckler 2. Because again, that occurred after the alleged retaliatory action in Beckler 1 and Beckler 3. With respect to flying the aircraft without proper qualifications and using a cell phone, what was the deficiency there? Was that of those that they found no exhaustion? Or was that just the absence of a protected disclosure? It was actually both, Your Honor. In the Beckler 2 decision, the board found that it did not constitute a protected disclosure because it was too vague. And as Your Honors discussed, it was too vague. In Beckler 3, the judge, I'm sorry, the board determined in Beckler 3 that it was not submitted to the Office of Special Counsel as an allegation. It was submitted in Beckler 1. Well, at this stage, we're talking about just the stage of non-frivolous allegation to get you to a hearing. That's correct. And so what kind of specificity is necessary? If you're saying flying an aircraft without proper qualifications, do you have to say what the qualifications were and say why he didn't have them? I mean, what kind of specificity was missing here that you think would be sufficient? In order to constitute a non-frivolous allegation of a protected disclosure, because there's a separate requirement that the allegation be submitted to the Office of Special Counsel. No, I know. Let's leave the exhaustion. As a protected disclosure. Well, it's a line-drawing contest. It's absolutely a line-drawing contest. And with respect to the flying, as Your Honor pointed out, there's no date. We don't even know when this allegedly occurred. There's no specification as to the basis for the belief that Mr. Edmonds lacked the necessary qualifications. What qualifications did Mr. Edmonds have? What qualifications should he have had? What is the basis for determining that he lacked them? What is his source of knowledge for why he lacked them? I think that's all relevant for a determination as to whether or not a disinterested observer could believe that there was a non-frivolous allegation of a protected disclosure. With respect to the cell phone. Before we get into the cell phone, what do you understand Mr. Beckler to be referring to when he talks about flying an air attack mission? What's an air attack mission, if you understand? Your Honor, again, I would not have that understanding from the allegations that are set forth in the allegations of Mr. Beckler. I do have the understanding that what's being In other words, there's airplanes that are sent out to try to determine the location of where there are forest fires so that fire retardant can be placed on those areas. That is done by sending out various planes in order to try to locate the areas and have contact on the ground and with the other aircraft. What was Beckler's alleged role? You mean Mr. Edmonds' alleged role? Pardon me, Edmonds' alleged role in this airplane incident. If you look at the allegations, it would appear that Mr. Beckler was alleging he was flying the aircraft. He was piloting the aircraft. If you look at the allegations, my understanding is that's not the case. In fact, these aircraft go out with two people at a time and that Mr. Edmonds was the second person in the aircraft who was in part involved with communications to other aircraft or to people on the ground in order to try to locate where there might be areas of fire in order to place the retardant on there and that it was the policy of the BLM, the Department of Interior at the time, to use cell phones. Remember the allegations in 1998. Is your point that he had the requisite training, qualifications, licenses, etc. to fly or co-fly the scouting type mission but not the retardant dumping type mission? No, I think that there's two people in the plane. This is the mission that he's on. He's on this surveillance mission is my understanding. But my point is he's not the pilot. If you look at the allegations, it looks like he's the pilot who's using the cell phone. My understanding is he was not the pilot. He was the other person on there whose primary responsibility was communication and that's why he may or may not have been using a cell phone. And again, this is not from the record, Your Honor. This is just from my investigation of the case. I'm simply- What's your answer to Judge Prost's question about what added facts would have put it on the other side of the line and entitled Beckler to a hearing to try to prove jurisdiction? With respect to the flying activities? Yes. I think we would need dates as to when this occurred. I think we would need- Why? It's illegal, it's illegal. What difference does it matter whether it was in 1997 or 1998 or whether it was in June or July? Because I think it would be helpful to know, particularly because of the allegation concerning the cell phone. My understanding is that the regulations and the policy of the Department of Interior changed over time as to how and under what circumstances they would use a cell phone. So to that extent, the date would be helpful. In addition to that, with respect to the qualifications, what would be important would be to have some allegation as to what was Mr. Beckler's understanding as to what qualifications Mr. Edmonds had, and what was his understanding as to what the requisite qualifications were, so that one could understand whether or not or assess whether or not he made a reasonable observer, disinterested observer, to conclude that there was some problem here. Does he have to have all those facts to make a non-frivolous allegation? Your Honor, that's a line drawing contest, and I- You've said that before, but I'm with Judge Prost. Draw me the line. I think that, you know- You're requiring him to know vast amounts of information about Mr. Edmonds' background and when he flew missions and when he was certified to do what. Wouldn't that be more a discovery process than an allegation process? Well, again, where you draw the line, I'm not certain. I think in order to- You had that disinterested observer standard in the Chance case, and I think that when you combine that standard with the comments from this court in the Johnston case, where this court talked about whether it's facially sufficient, whether or not- And I want to use the exact words of the court- Detailed and facially well-supported disclosures. I think here, in order to have a facially well-supported disclosure, you needed some comment as to why he had an understanding that the requisite qualifications weren't there. I think you had to have some understanding as to why he believed, or reasonably believed, or a reasonable person would believe, that it was improper to use the cell phone. We don't have any of that here. You said earlier that among the things lacking was corroboration. Is there any case holding that corroboration is needed to state an allegation that will entitle someone to a hearing? No. There certainly is no such case, Your Honor, but it adds to the specificity and detail, and as to when you get to that line. If you have a source of this information, then one becomes more able to understand why a disinterested observer could reach that conclusion. It's not an absolute prerequisite, nor is it an absolute prerequisite to state the specific regulation or the specific statute that was violated in order to constitute a non-frivolous allegation of a protected disclosure, but it's helpful. It moves you in that direction. For example, we don't know here whether he's saying that Mr. Edmonds, by doing this, using the cell phone, violated the policy of the interior, or did he violate a regulation, and that is the policy of the interior. If it had such a policy to use cell phones, was it a violation? We don't know. That information would be very helpful. The problem I'm having is that I think one could have argued that this dividing line that you draw between a frivolous and a non-frivolous allegation goes, and in some respects, you have allegations here where even if proven, this wouldn't rise to the level of a protected disclosure. You say that with respect to the 14,000 whatever, but it seems to me this flying an aircraft without proper qualifications, at least that allegation, if true, would be close to at least arguably reaching the standard for your honor on that. And so then we're left to whether or not he gives you sufficient facts to come up with it, but I think that's a... What standard do we apply when we review the AJ and the MSPB's determination that this didn't go over the line you've drawn between a frivolous and a non-frivolous allegation? I think that's a de novo standard, your honor. Okay, so there's no difference in terms of specificity of facts, which seems sort of like a factual determination, but the specificity is reviewed de novo? Yeah, I think it's de novo, and I see that my time is up, and unless the court has any other questions, we would ask you to confirm the decision of the court. Thank you. Mr. Thompson, we'll give you three minutes back. Thank you, your honor. In trying to track Mr. Rustin's argument and peruse the record, I was unable to find the documents the court requested, and I confess that, but I believe they are there, and at least for de novo review purposes in the agency record. How do we review anything de novo if you give us nothing to review? I believe I have given it to you, your honor. I wasn't able to find it in my own appendix while tracking argument this morning, but in a decision that's cited by the board in its own final decisions, the Grubb versus Department of the Interior case, and I believe there are decisions of this circuit that say the same thing. In order to establish board jurisdiction over an IRA appeal, the appellant's not required to prove that he made protected disclosures merely to make a non-frivolous allegation that the disclosures were protected, and this segues into the discussion that was just being had over where the line is being drawn, but in Johnston versus Merit Systems Protection Board, a decision of this case we recited, page 48 of our brief, 2008, that discusses the distinction between substantive and petitioner's claims, and in reversing in that case, this court stated the board erroneously conflated the requirements for establishing jurisdiction with those required to prevail in the merits of a whistleblower protection act claim. This court, for more than 10 years, has tried to get the board to clearly separate the issue of jurisdiction from that of the merits of a petitioner's case, relating the non-frivolous allegation standard to the... What's the difference in your view between a frivolous allegation and a non-frivolous allegation? A frivolous allegation would be one because of its context would have no possibility of being correct. If in this particular case, not only was a jurisdictional, even a jurisdictional hearing denied by both the AJ and... Well, you don't get a jurisdictional hearing unless you prove it's non-frivolous, so that's why I'm asking you what the difference is between frivolous and non-frivolous. Non-frivolous allegation should take into account the person making the allegation, the context of the allegation, the substance of the allegation upon its face. If there is the ability to flesh out, bearing in mind that under Grubb and other decisions, the petitioner is not required to prove that he made those allegations just to make them. All he's required to do to establish jurisdiction is to make them. The non-frivolousness, I think, simply goes to a very facial analysis of the allegation on its face. In this particular case, as I said, there were more than simply the hookup, even those that were conveyed to the OSC. This is a case that sits in a situation where Mr. Beckler, who is a historic whistleblower of many years, is communicating on what he thought was a confidential basis in an record. I would refer to pages 320 to 323, and there's others, appendix pages 50 to 79 and 290 to 319. Footnote 2 recites them. In this particular setting, Mr. Beckler is engaging in an ongoing conversation with Mr. Wood, Special Agent Wood, and suddenly Wood's there with Thomas Boatner and others who were his immediate supervisors. They went through his house, took eight duffel bags worth of stuff out of him. What does the subsequent search have to do with whether Beckler's series of reports to the agent of the IG stated a non-frivolous... Those were subsequently communicated to the OSC and thus became part of this case. Don't you agree that either his reports to the IG make out a protected disclosure from their content or they don't, regardless of what happened later in terms of a search of his records? Mr. Beckler was eventually charged with a felony, ended up pleading to a misdemeanor, and his career was ruined. This was the most vindictive setting that this thing sat in. I'm asking this court to, in its de novo review, take a look at what happened here. This guy was a competent, professional employee who had a good service record and who didn't countenance pretenders and administrative buffoons and did not do things in a very subtle manner. However... All right. Well, we've got the record. I appreciate it. Either it meets the legal standard or it doesn't. We'll take the case under... I appreciate it. Thank you. Thank you both, counsel.